1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   FRANCISCO GUDINO CARDENAS, et        No.  2:18-cv-03021-TLN-DMC
     al.,
12
                     Plaintiffs,
13                                         **ORDER**
           v.
14
     COUNTY OF TEHAMA, et al.,
15
                     Defendants.
16

17

18         This matter is before the Court on Defendants County of Tehama ("County"), Sheriff

     Dave Hencratt ("Hencratt"), and Assistant Sheriff Phil Johnson's ("Johnson")[1] (collectively,
19
     "Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF
20
     No. 9.)  Per the Court's Order Relating Cases (ECF No. 7), the identical Motion was filed in each
21
     related case.[2]  Plaintiffs in this case (No. 2:18-cv-03021-TLN-DMC), Francisco Gudino Cardenas
22

23   _____

24   [1]      Plaintiffs' Complaint alleges actions against Phil "Johnson," however, in the related cases
     and in Defendants' briefs, this individual is referred to as Phil "Johnston."  Plaintiffs will be given
25   leave to amend this name should they discover this change was made in error.  This Order will
     refer to Phil Johnston.
26
     [2]      The related cases are as follows: 2:18-cv-02916-TLN-DMC (Phommathep); 2:18-cv-
27   02927-TLN-DMC (Steele); 2:18-cv-02918-TLN-DMC (Woods); 2:18-cv-02912-TLN-DMC
     (McFadyen); 2:18-cv-02917-TLN-DMC (A.H.); 2:18-cv-03021-TLN-DMC (Cardenas).
28
                                          1

and Marta Gudino Landaverde ("Plaintiffs"), filed an opposition independent of the other related cases. (ECF No. 11.)  Defendants filed a single reply. (ECF No. 12.)  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.[3]

## I.   FACTUAL AND PROCEDURAL BACKGROUND[4]

On November 14, 2017, Kevin Neal ("Neal") murdered at least five people and wounded approximately a dozen more before killing himself in a shootout with law enforcement. According to the Complaint, Neal was well known to law enforcement and they had reason to come into contact with him numerous times before that date.

On November 13, 2016, Sheriff's deputies responded to an incident in which Neal punched a woman in the nose and then shot at her and her boyfriend. Deputies left without making arrests. That same day, Neal's neighbor, Diana Steele ("Steele"), called the Sheriff's Department reporting Neal was shooting and yelling in his yard. Deputies responded, but finding the scene quiet on arrival, left.

On January 31, 2017, Neal shot an illegally modified Bushmaster AR-15 rifle to menace Steele, her son Danny Elliott, and his girlfriend, Hailey Poland ("Poland"). During the altercation, Neal punched Steele and stabbed Poland in the stomach with a 10-inch knife. Sherriff's deputies arrested Neal in connection with this incident.

On February 28, 2017, the Tehama County Superior Court issued a criminal protective order against Neal in protection of Steele and Poland. The protective order required Neal to surrender all firearms in his possession and prohibited him from acquiring or possessing firearms or ammunition. The protective order also instructed any sworn officer with knowledge that Neal had possession of a gun or ammunition to arrest him.

---

[3]     While the Court has entered identical orders in 2:18-cv-02916 (Phommathep); 2:18-cv-02927 (Steele); 2:18-cv-02918 (Woods); 2:18-cv-02912 (McFadyen); and 2:18-cv-02917 (A.H.) in line with its instruction to file a single motion for all cases and in order to ensure the continuity of these cases, this order is unique because the Complaint in 2:18-cv-03021 (Cardenas) alleges different causes of action and these Plaintiffs elected to file a separate opposition.

[4]     The following recitation of facts is derived from the Complaint in this action. (ECF No. 1.)

1    On March 17, 2017, the Tehama County Superior Court issued a civil harassment
2    restraining order against Neal in protection of Steele and her family as well as Poland.  The
3    restraining order was served on Neal.  Neal only surrendered one firearm subsequent to being
4    served with the protective and restraining orders.

5    The Complaint also alleges a number of reports to the Sheriff's Department regarding
6    Neal's possession of guns including: a report from his girlfriend that she was missing a firearm; a
7    complaint on August 21, 2017, by Neal's neighbor, Diana Steele, that Neal was shooting a
8    shotgun towards her home; and an October 21, 2017 complaint by a different neighbor of
9    gunshots and screams coming from Neal's house.  Plaintiffs assert law enforcement either did not
10   respond to each of these reports or responded briefly but did not make contact with Neal.
11   Plaintiffs also allege ammunition could be seen on Neal's property from the public road.  One of
12   Neal's family members contacted the Sheriff's Office "shortly before the shooting" informing
13   Defendants that Neal was mentally unstable, deteriorating, and had illegal firearms.  The
14   Complaint also asserts deputies actually saw Neal in possession of one or more firearms and that
15   Neal admitted to a deputy that he had been shooting.

16   The Complaint asserts the Sheriff's office justified their decision not to arrest Neal
17   because they could not "prove to a judge that there is no doubt" he fired a gun and that they could
18   not arrest Neal if he was shooting in a safe manner.

19   On November 13, 2017, Neal went on his shooting rampage.  Neal First shot and killed
20   his girlfriend, then shot his neighbors and stole a truck.  He continued to a nearby school where
21   he opened fire, injuring two children.  In the course of his rampage, Neal stole another car,
22   rammed a couple off the road, and shot and injured a number of people.

23   Neal encountered Plaintiff Francisco Gudino Cardenas ("Cardenas") at the end of his
24   rampage.  Cardenas was driving to the post office when he saw and heard a police car speeding
25   towards him.  Cardenas pulled over to the side of the road and the police car stopped on the road
26   ahead of Cardenas.  Neal had pulled up to the left side of the road, slightly behind Cardenas.  Law
27   enforcement and Neal began exchanging fire with Cardenas caught in the middle.

28   ///

1    Cardenas attempted to drive out of the crossfire, backing his car off the road behind

2    Neal's vehicle.  Cardenas took cover on the floorboards of the passenger side of his car,

3    eventually crawling out of the passenger door.  As he stepped out, his right leg was shot.

4    Cardenas again took cover, this time by his bumper.  Law enforcement rammed Neal's car closer

5    to Cardenas on the side of the road.  Shortly thereafter, law enforcement shouted, "suspect down."

6    Cardenas then started dragging himself out from behind his car, yelling for help.  Officers

7    shouted, "suspect," several times and shot at Cardenas.  Once they stopped, Cardenas again tried

8    to move out from behind his car.  Officers approached and Cardenas noted his leg was bleeding

9    profusely.  Cardenas told officers his name and address and lost consciousness.

10   The Complaint alleges Neal took his own life at 8:19 a.m.  It further alleges Cardenas was

11   taken to Mercy Medical Center in Redding by ambulance, approximately 38 miles away, but did

12   not reach the medical center until 9:42 a.m.  The Complaint concludes that, based on these facts,

13   law enforcement unreasonably delayed and/or impeded ambulance service and emergency

14   medical care from reaching Cardenas.

15   Cardenas survived his wounds — a gunshot injury to his right thigh transecting the

16   popliteal artery and multiple shrapnel lacerations, at least one of which pierced his back and

17   lacerated his liver — with medical intervention.  However, Cardenas continues to have a highly

18   restricted range of motion, pain, and numbness in his right leg.  The Complaint alleges these

19   lingering symptoms severely limit his ability to work and perform daily living activities.

20   **II.    STANDARD OF LAW**

21   Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

22   statement of the claim showing that the pleader is entitled to relief."  *See Ashcroft v. Iqbal*, 556

23   U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the

24   defendant fair notice of what the claim...is and the grounds upon which it rests."  *Bell Atlantic v.*

25   *Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice

26   pleading standard relies on liberal discovery rules and summary judgment motions to define

27   disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*,

28   534 U.S. 506, 512 (2002).

4

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the...laws in ways that have not been alleged[.]"  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[ ] [his or her] claims...across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

///

5

1    In ruling upon a motion to dismiss, the court may consider only the complaint, any

2  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

3  Evidence 201.  See *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

4  *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

5  1998).

6    If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

7  amend even if no request to amend the pleading was made, unless it determines that the pleading

8  could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122,

9  1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir.

10  1995)); see also *Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of

11  discretion in denying leave to amend when amendment would be futile).  Although a district court

12  should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's

13  discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended

14  its complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

15  2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

16    **III.   ANALYSIS**

17    This is a case grounded in tragic circumstances.  The question for the Court at this stage,

18  however, is not if these Plaintiffs were harmed, but rather whether county entities and officials

19  can be held liable for that harm.  Plaintiffs bring numerous causes of action against the County

20  Defendants.  The claims relevant to this motion are as follows.  Plaintiff Cardenas brings four

21  claims pursuant to 42 U.S.C. § 1983: (1) violation of due process and equal protection under the

22  Fourteenth Amendment, citing a state created danger theory against all Tehama County

23  Defendants;[5] (2) violation of Fourteenth Amendment due process under a danger creation and

24  deliberate indifference to medical needs theory against all individual Defendants;[6] (3) violation of

25  ────────────
26  [5]   The Court understands this to indicate Defendants County of Tehama, Hencratt, and
Johnston.

27  [6]   The Court understands this to indicate Defendants Hencratt, Johnston, Corning Police
Chief Jeremiah Fears (dismissed by stipulation of the parties (ECF No. 8)), and the newly
28  substituted Defendant Lester Squier (ECF No. 15).  The present Motion is brought only by the

6

1   the Fourth Amendment under an unreasonable seizure/excessive force theory against all

2   individual Defendants; and (4) violation of the Fourteenth Amendment for deprivations of due

3   process shocking the conscience against all individual Defendants.  Plaintiff Cardenas also brings

4   a fifth cause of action for failure to intervene to prevent civil rights violations under 42 U.S.C.

5   §§1983, 1985, and 1986 and a sixth cause of action for conspiracy to violate civil rights under 42

6   U.S.C. § 1985 against all individual Defendants.  Cardenas additionally brings a claim for assault

7   and battery against all Defendants as well as one for intentional infliction of emotional distress

8   and another for negligence.  Plaintiff Marta Gudino Landaverde ("Landaverde") brings a claim

9   for loss of consortium against all Defendants.  Both Plaintiffs bring a claim for trespass to chattels

10  and/or conversion against all Defendants.

11              A.  Standing

12          As an initial matter, Defendants argue that a number of the Plaintiffs across all related

13  actions do not have standing to bring many of the claims asserted in the numerous complaints.

14  While Defendants do not specify which Plaintiffs may lack standing nor which causes of action

15  they might be unable to bring, it appears Defendants are only challenging actions brought by

16  individuals as successors in interest.  As no Plaintiffs in this case are bringing their claims as

17  successors in interest, this argument is not applicable.

18              B.  First Cause of Action for Violation of the Fourteenth Amendment

19                  i.  Equal Protection Claim

20          Plaintiffs correctly assert in their opposition that Defendants do not challenge the First

21  Cause of Action insofar as it asserts a violation of equal protection under the Fourteenth

22  Amendment.  In reply, Defendants claim that the equal protection argument is "part and parcel"

23  with their arguments regarding "*DeShaney*, *Castle Rock*, and *Zelig*."  (ECF No. 9 at 26.)  This

24  argument is unpersuasive.  In order to make out an equal protection violation, a plaintiff must

25  "demonstrate that enforcement had a discriminatory effect and the police were motivated by a

26  discriminatory purpose."  *Rosenbaum v. City & Cty. of San Francisco*, 484 F.3d 1142, 1152 (9th

27

28  County, Hencratt, and Johnston.

1   Cir. 2007).  This is a standard unique from those discussed regarding special relationship and

2   state created danger theories of Fourteenth Amendment due process violations.  Defendants failed

3   to discuss this standard and thus did not challenge the First Cause of Action insofar as it asserts

4   violation of equal protection in their Motion.  Instead, Defendants cite the appropriate test for an

5   equal protection violation claim for the first time in their reply and assert that Plaintiffs have

6   failed to allege facts showing purposeful discrimination.  Defendants further argue the Equal

7   Protection Clause does not entitle a person to "adequate, or indeed to any, police protection*."*

8   *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000).  Defendants may not bring these

9   arguments for the first time in reply.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The

10   district court need not consider arguments raised for the first time in a reply brief").  To the extent

11   Defendants seek to dismiss the First Cause of Action under an equal protection theory, the

12   Motion is DENIED.

13             *ii.  Deprivation of Due Process State Created Danger*

14         Plaintiffs' First Cause of action is asserted against Tehama County Defendants for

15   violation of due process under the Fourteenth Amendment.  Generally, there is no duty on the part

16   of government entities to protect the life, liberty, and property of its citizens against invasion by

17   private parties.  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

18   However, there are two exceptions to this general rule: "(1) the 'special relationship' exception;

19   and (2) the 'danger creation' exception." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992).

20   Plaintiff's claim is only predicated on a state created danger theory.  In order to prevail under a

21   state created danger theory, a plaintiff must show (1) there was "affirmative conduct on the part

22   of the state in placing the plaintiff in danger" and (2) the state acted with "deliberate indifference"

23   to a "known or obvious danger." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011)

24   (citing *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000) and *L.W. v.*

25   *Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)).

26   ///

27   ///

28   ///

1    Plaintiffs argue Defendants engaged in affirmative conduct by failing to address the

2    complaints against Neal and, in doing so, gave prior assurance to Neal that he would not be

3    punished for infractions.  In support of this assertion, Plaintiffs analogize to *Dwares v. City of*

4    *New York*, 985 F.2d 94 (2nd Cir. 1993), *Pena v. DePrisco*, 432 F.3d 98 (2nd Cir. 2005), and *Okin*

5    *v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 430 (2d Cir. 2009).[7]  However, these

6    cases are not controlling and are easily distinguishable in any event.

7        In *Dwares*, the complaint alleged police told the third-party attackers that police would

8    not interfere with the attack unless it got "completely out of control."  *Dwares*, 985 F.2d at 97.  In

9    *Pena*, a police officer killed a number of people while driving intoxicated.  *Pena*, 432 F.3d 98.

10   The complaint in that case alleged fellow officers and supervisors failed to intervene, which the

11   circuit court explicitly found insufficient to state a claim under a state created danger theory.  The

12   circuit court did, however, find a sufficient allegation that the officer was encouraged to

13   inappropriately and excessively drink alcohol.  *Pena*, *432* F.3d at 111.  The Second Circuit noted

14   that "the key question is whether the individual defendants told, or otherwise communicated to,

15   [the officer] that he could drink excessively and drive while intoxicated without fear of

16   punishment."  *Id.*  *Pena* established that the state actor must communicate with the individual

17   who perpetrated the harm in order to be liable under § 1983.  *Id.*  In *Okin*, "[t]he record

18   demonstrates an escalating series of incidents that followed the officers' response to Okin's first

19   complaint of domestic violence, where the officers and [the perpetrator] had discussed sports, and

20   the officers openly expressed camaraderie with [the perpetrator] and contempt for Okin."  *Okin*,

21   577 F.3d at 430.

22   ///

23   ///

24   ///

25

26   [7]    Plaintiffs also cite *Freeman v. Ferguson*, 911 F.2d 52 (8th Cir. 1990), however, the
     procedural posture of *Freeman* makes it inapplicable here.  In *Freeman*, the circuit court
27   overturned the district court's decision to dismiss the complaint without leave to amend.  The
     circuit court did not explicitly find that the additional facts argued on appeal would save the
28   complaint, but rather found the plaintiffs should have the opportunity to amend.

9

In *Okin*, *Pena,* and *Dwares* the state actor had direct contact with the third-party assailant, indicating — whether explicitly or implicitly — to them that no action would be taken to prevent, stop, or punish their misconduct.  Further, the Second Circuit noted that it is the perpetrator's awareness of law enforcement's dismissive and indifferent attitude toward complaints that "nullifies the deterrent capacity of police response."  *Okin*, 577 F.3d at 430.  Here, Plaintiffs allege law enforcement failed to respond to various reports against Neal; Plaintiffs do not, however, allege Neal was aware of these reports, nor of law enforcement's response, or lack thereof, to the reports.  The Complaint does allege one occasion on which a sheriff's deputy had contact with Neal wherein Neal admitted to shooting a gun.  While it is alleged the sheriff's deputy took no action, this single event is insufficient to establish an implicit prior assurance that should Neal perpetrate violence against others, law enforcement would not respond.

As for controlling authority, both parties cite *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006).  In *Kennedy*, the officer in question informed the assailant of a complaint made against him by his neighbor.  The officer knew of the assailant's violent history, including breaking and entering, and of the neighbor's fear of retribution.  That same night, the assailant broke into the neighbor's house, shot her, and shot and killed her husband.  The court found these facts sufficient to allege affirmative conduct on the part of the officer placing the neighbor in danger she would not have otherwise faced.  In *Kennedy*, unlike the allegations in the Complaints here, the officer took an affirmative action: contacting the assailant.  The Complaints here do not allege any affirmative actions; the closest they come is alleging that unnamed officers threatened to arrest the individuals filing complaints against Neal.  While such a statement by officers is objectionable, it is insufficient to allege an affirmative act that placed the victims in a more dangerous position.  Regardless of this conduct, Neal was, and would have remained, a dangerous individual prone to violent behavior.  Further, the officers' failure to enforce the restraining orders or follow up directly with Neal regarding the complaints against him are examples of inaction, not affirmative conduct, and are insufficient to state a claim under the state created danger theory.

///

10

1    The Court need not reach the question of deliberate indifference because the Complaints

2    fail to allege affirmative acts by Defendants placing Plaintiffs in danger.

3    Plaintiffs have not stated sufficient facts to allege a violation of the Fourteenth

4    Amendment based on a state created danger theory, and so Defendants' Motion is GRANTED as

5    to Plaintiffs' first cause of action for violation of due process.  Because the defects described

6    above could be cured by amendment, such dismissal is with leave to amend.  *Lopez*, 203 F.3d at

7    1130.

8                   C.   Second Cause of Action for Deprivation of Due Process, Danger Creation, and

9                        Deliberate Indifference to Medical Needs

10   Plaintiffs assert unnamed officers placed Cardenas in a position that was more dangerous

11   than the one in which they found him by "exposing [Cardenas] to the gunman, Neal's, gunfire; by

12   themselves shooting in [Cardenas's] direction and actually at [Cardenas], and thereby causing

13   [Cardenas] to be struck by projectiles; and by impeding and delaying [Cardenas's] access to an

14   ambulance and emergency medical care."  (ECF No. 1 at ¶ 118.)

15   Cardenas brings this claim against Sheriff Hencratt and Assistant Sheriff Johnston, as well

16   as various Doe Defendants.  Hencratt and Johnston are the only two "individual defendants" who

17   have brought this Motion to Dismiss.[8]  "Under Section 1983, supervisory officials are not liable

18   for actions of subordinates on any theory of vicarious liability."  *Hansen v. Black*, 885 F.2d 642,

19   645–46 (9th Cir. 1989).  However, "[a] supervisor may be liable if there exists either (1) his or

20   her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection

21   between the supervisor's wrongful conduct and the constitutional violation."  *Id.*

22   The Complaint alleges Hencratt and Johnston are supervisors.  (ECF No. 1 at ¶¶ 15–16.)

23   The Complaint further asserts in conclusory fashion, "The supervisory defendants are liable to

24   plaintiff for their own acts and/or omissions; for inadequately training, supervising, and

25   controlling their subordinates; for acquiescing in their subordinates' acts and/or omissions; and/or

26   for evincing a reckless disregard or callous indifference to plaintiff's rights…."  (*Id.*)  However,

27

28

---

[8]    Lester Squier was recently substituted for Doe Defendant #1.  (ECF No. 14.)  However, Lester Squire is not a moving party and therefore is not impacted by this analysis.

1    there are no allegations that Hencratt or Johnston participated in the shootout, were anywhere in

2    the vicinity of the shootout, or took personal action to delay medical care.  The conclusory

3    statement that these Defendants inadequately trained their subordinates is insufficient under the

4    pleading standards and cannot support the necessary causal connection between the supervisor's

5    alleged wrongful action and the constitutional violation.  The Complaint does not provide facts

6    showing in what ways Hencratt and Johnston failed to train the officers in question, nor how that

7    failure had a sufficient causal connection to either the shooting or the alleged delay in medical

8    care.

9           In short, because the Complaint fails to allege facts related to Hencratt and Johnston's

10   involvement in the shooting or delayed medical response, nor the specific failures of their training

11   or supervision, the Second Cause of Action must be dismissed as to these two Defendants.

12   Defendants' Motion to Dismiss the Second Cause of Action is therefore GRANTED as to

13   Hencratt and Johnston.  Because the defects described above could be cured by amendment, such

14   dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

15                       D.  Third Cause of Action for Violation of the Fourth Amendment

16          Cardenas also alleges a violation of the Fourth Amendment for unreasonable seizure and

17   excessive force.  The Fourth Amendment is not "a guarantee against *all* searches and seizures, but

18   only against *unreasonable* searches and seizures."  *United States v. Sharpe*, 470 U.S. 675, 682

19   (1985) (emphasis in original).  In evaluating the reasonableness of a stop, courts examine

20   "whether the officer's action was justified at its inception, and whether it was reasonably related

21   in scope to the circumstances which justified the interference in the first place."  *Terry v. Ohio*,

22   392 U.S. 1, 20 (1968).

23          As a preliminary matter, Defendants Hencratt and Johnston — the "individual

24   Defendants" bringing the present Motion — cannot be held liable for the actions of individual

25   officers on a vicarious liability theory under § 1983, as discussed above.  *Hansen*, 885 F.2d at

26   645–46.  Plaintiffs have failed to plead any facts which would allow them to bring this cause of

27   action against these individual Defendants.  Again, Plaintiffs assert the conclusory statement that

28   Hencratt and Johnston inadequately trained, supervised, and/or controlled their subordinates.

1    (ECF No. 1 at ¶ 132.)  But the Complaint is devoid of facts showing any actions on the part of

2    Hencratt and Johnston which would expose them to liability.  Indeed, there are no facts indicating

3    what, in the training of their subordinates, was the deficiency that ultimately lead to the alleged

4    constitutional deprivation, nor that Hencratt or Johnston were personally involved in the shooting.

5           For this reason, Defendants' motion to dismiss this cause of action is GRANTED as to

6    Johnston and Hencratt.  Because the defects described above could be cured by amendment, such

7    dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

8                         E.   Fourth Cause of Action for Deprivation of Due Process Shocking to the

9                              Conscience

10          Plaintiff asserts in their Opposition that this Cause of Action is pleaded in the alternative

11   to the Third Cause of Action for violation of the Fourth Amendment.  (ECF No. 11 at 21.)  As

12   such, this claim is predicated on the same facts as the one before it.  Again, Defendants Hencratt

13   and Johnston cannot be held liable for the actions of their subordinates on a vicarious liability

14   theory.  *Hansen*, 885 F.2d at 645–46.  For all the reasons discussed above, and because Plaintiffs

15   have failed to plead facts indicating Hencratt and Johnston's personal involvement, this Cause of

16   Action is similarly dismissed as to these Defendants.  Therefore, Defendants' motion to dismiss

17   this cause of action is GRANTED as to Johnston and Hencratt.  Because the defects described

18   above could be cured by amendment, such dismissal is with leave to amend.  *Lopez*, 203 F.3d at

19   1130.

20                        F.   Qualified Immunity

21          Qualified immunity protects government officers from "liability for civil damages insofar

22   as their conduct does not violate clearly established statutory or constitutional rights of which a

23   reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson*

24   *v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity questions are to be resolved at the

25   "earliest possible stage in litigation" because qualified immunity is "an immunity from suit rather

26   than a mere defense to liability."  *Pearson*, 555 U.S. 231–2; *Mitchell v. Forsyth*, 472 U.S. 511,

27   526 (1985).

28   ///

                                                  13

1    In determining qualified immunity, courts must ask: (1) taken in the light most favorable
2    to the party asserting the injury, do the facts alleged show the officer's conduct violated a
3    constitutional right (*Saucier v. Katz*, 533 U.S. 194, 201 (2001)); and (2) whether the right was
4    "clearly established" at the time of the alleged misconduct (*Pearson*. 555 U.S. at 223–25).

5    As set forth above, Plaintiffs' § 1983 claims have been dismissed on other grounds,
6    therefore, the Complaint as it stands fails to allege a constitutional violation.  Because of this, the
7    Court need not analyze whether certain clearly established rights existed at the time of the alleged
8    misconduct.  However, because the Court has granted Plaintiffs leave to amend their § 1983
9    claims, it would be premature to grant a motion to dismiss based on qualified immunity
10   independent from the failure to state a violation in and of itself.   If and when Plaintiffs
11   successfully amend to allege a constitutional violation, Defendants are free to raise qualified
12   immunity.

13                    G.   Fifth and Sixth Causes of Action Under 42 U.S.C. §§ 1983, 1985, and 1986.

14   Cardenas brings his Sixth Cause of Action under 42 U.S.C. § 1985, however, he fails to
15   specify under which subsection he brings this claim.  Defendants move to dismiss these claims
16   and Plaintiffs do not explicitly oppose, except to request leave to amend.  42 U.S.C. § 1985(2)
17   prohibits conspiracies to obstruct justice, specifically by denying access to state or federal courts.
18   Subsection (3) prohibits "two or more persons in any State or Territory conspire[ing] or go[ing] in
19   disguise on the highway or on the premises of another, for the purpose of depriving, either
20   directly or indirectly, any person or class of persons of the equal protection of the laws, or of
21   equal privileges and immunities under the laws."  42 U.S.C.A. § 1985(3).[9]  Plaintiffs have failed
22   to state a claim under either of these subsections.

23   ///

24   ///

25   ///

26   _____

[9]    Subsection (1) prohibits a conspiracy to "prevent, by force, intimidation, or threat, any
27   person from accepting or holding any office, trust, or place of confidence under the United States,
     or from discharging any duties thereof…" 42 U.S.C.A. § 1985(1).  There are no allegations in the
28   Complaint that either Plaintiff held office.  Therefore, this subsection is inapplicable.

14

First, the Complaint does not assert any facts indicating that Cardenas was denied access to the courts.  Further, liability under this section requires proof of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *See Griffin v. Brekenridge*, 403 U.S. 88, 102 (1971).  Plaintiffs fail to allege facts showing they were targeted as members of a class, let alone a suspect class.  Elsewhere in the Complaints, Plaintiffs assert an equal protection claim based on their residency in Rancho Tehama, but this class does not meet the standard necessary for protection under § 1985.  *See Trerice v. Pedersen*, 769 F.2d 1398, 1402 (9th Cir. 1985) (finding the class of military prisoners does not meet the standard under § 1985); *Nakao v. Rushen*, 542 F.Supp. 856, 859 (N.D.Cal.1982) (class of "state prisoners" not protected under section 1985(3) because there has been no congressional determination that it requires special federal civil rights assistance, and because it does not possess "discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex").  Neither does the Complaint assert facts which would indicate an "invidiously discriminatory animus" on the part of any Defendant.

Next, "[t]o state a cause of action under [§] 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States."  *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).  "A § 1985 claim 'must allege facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient.'"  *Buckelew v. Gore*, No. 20-CV-00158-WQH-JLB, 2020 WL 4188166, at *13 (S.D. Cal. July 21, 2020) (quoting *Hamilton v. Hurtado*, No. 12cv1940 JAH (RBB), 2013 WL 3964755, at *7–8 (S.D. Cal. July 31, 2013)).  Plaintiffs only make the bare assertion that Defendants conspired with each other.  There are no additional facts which support this conclusion.  Further, the same requirement that the deprivation of a right must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" applies.  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (internal quotations and citations

omitted).  As discussed above, the allegation that Plaintiffs were denied equal protection based on the location where they lived is insufficient to meet this standard.

Plaintiffs' Complaint therefore fails to assert a cause of action under § 1985(2) or (3) and Defendants' motion to dismiss as to these claims is GRANTED with leave to amend.

Cardenas's Fifth Cause of Action additionally asserts a claim pursuant to 42 U.S.C. § 1986, which also necessarily fails.  42 U.S.C. § 1986 provides in relevant part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented

42 U.S.C.A. § 1986.  The Ninth Circuit has asserted that "a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985." *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985).  A valid claim for relief under § 1985 is therefore a condition precedent for any action under § 1986.  Because Plaintiffs' § 1985 claim fails, so must their cause of action under § 1986.  Therefore, Defendants' motion to dismiss this claim is GRANTED.  Because the defects described above could be cured by amendment, such dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

H.   Seventh Through Eleventh Causes of Action

"The district court considers, *sua sponte*, whether Plaintiff's conclusory allegation that he complied with the California Tort Claims Act is sufficiently pleaded for purposes of the Tort Claims Act, California Government Code § 810 et seq., as it raises a jurisdictional issue." *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1224 (E.D. Cal. 2009).  "The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part." *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  "The CTCA applies to state law claims wherever those claims are brought, and the requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in federal court." *Butler v. Los Angeles*

16

1    *Cty.*, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).  The California Tort Claims Act ("CTCA")

2    applies to actions for damages against local public entities or public employees acting within the

3    scope of that employee's public employment.  Cal. Gov. Code § 950.2.  "[A] plaintiff must allege

4    facts demonstrating or excusing compliance with the claim presentation requirement.  Otherwise,

5    his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a

6    cause of action."  *State of California v. Superior Court*, 32 Cal. 4th 1234, 1243 (2004).  "The

7    timely presentation of a claim under the Tort Claims Act is not merely a procedural requirement

8    but is an actual 'element of the plaintiff's cause of action.'"  *Creighton v. City of Livingston*, 628

9    F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) (quoting *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th

10   201, 209 (2007)).

11         While the Complaint here states "Plaintiffs filed timely administrative 'tort' claims against

12   County of Tehama, City of Corning, and State of California officials pursuant to Cal. Gov. Code

13   §§ 910 et seq., and hereby timely files this lawsuit within six months of defendants' rejections of

14   those claims" (ECF No. 1 at ¶ 10), this statement is a mere legal conclusion.  Plaintiffs have not

15   provided the claim as an attachment to the Complaint, nor have they alleged what specific facts

16   and causes of action were referenced in the claim.  Without such information Plaintiffs have not

17   sufficiently pleaded facts demonstrating they complied with the CTCA in bringing this state tort

18   claim.  Therefore, Defendants' motion to dismiss this cause of action is GRANTED.  Because the

19   defects described above could be cured by amendment, such dismissal is with leave to amend.

20   *Lopez*, 203 F.3d at 1130.

21         Plaintiffs additionally assert state tort claims for intentional infliction of emotional distress

22   ("IIED"), negligence, loss of consortium, and trespass to chattels/conversion — causes of action

23   eight through eleven — but fail to allege compliance with the California Tort Claims Act

24   ("CTCA").  Like the assault and battery claim, a plaintiff must first comply with the CTCA

25   before bringing a suit for damages based in state law under these causes of action.  *Mangold*, 67

26   F.3d at 1477.  Plaintiffs have failed to allege facts demonstrating compliance with the CTCA.

27   The statement that Plaintiffs "filed timely administrative 'tort' claims" is a mere conclusion.  As

28

17

such, these causes of action must be dismissed.[10]  Therefore, Defendants' motion to dismiss claims eight, nine, ten, and eleven is GRANTED.  Because the defects described above could be cured by amendment, such dismissal is with leave to amend.  *Lopez*, 203 F.3d at 1130.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss as follows:

1.  The Motion to Dismiss the First Cause of Action is GRANTED with leave to amend as to the due process claim and DENIED as to the equal protection claim;

2.  The Motion to Dismiss the Second Cause of Action is GRANTED as to Defendants Hencratt and Johnston, with leave to amend;

3.  The Motion to Dismiss the Third Cause of Action is GRANTED as to Defendants Hencratt and Johnston, with leave to amend;

4.  The Motion to Dismiss the Fourth Cause of Action is GRANTED as to Defendants Hencratt and Johnston, with leave to amend;

5.  The Motion to Dismiss the Fifth Cause of Action is GRANTED with leave to amend;

6.  The Motion to Dismiss the Sixth Cause of Action is GRANTED with leave to amend;

7.  The Motion to Dismiss the Seventh Cause of Action is GRANTED with leave to amend;

8.  The Motion to Dismiss the Eighth Cause of Action is GRANTED with leave to amend;

9.  The Motion to Dismiss the Ninth Cause of Action is GRANTED with leave to amend;

---

[10]    Defendants make a brief assertion that Johnston and Hencratt's statements are protected under the Anti-SLAPP statute.  However, in order to assert protection under the Anti-SLAPP statute, Defendants must file a separate special motion to strike.  CCP § 425.16(b).  No such motion has been filed and therefore this Court will not analyze this cause of action under the Anti-SLAPP statutes.

1          10. The Motion to Dismiss the Tenth Cause of Action is GRANTED with leave to

2              amend;

3          11. The Motion to Dismiss the Eleventh Cause of Action is GRANTED with leave to

4              amend;

5       Plaintiffs may file an amended complaint not later than 30 days from the date of electronic

6   filing of this Order.  Defendants' responsive pleading is due 21 days after Plaintiffs file the

7   amended complaint.

8       IT IS SO ORDERED.

9   DATED:  August 3, 2020

 

 

Troy L. Nunley
United States District Judge