UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO GUDINO CARDENAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF TEHAMA, et al., <br><br> Defendants. | No. 2:18-cv-03021-TLN-DMC <br><br><br> **ORDER** |

This matter is before the Court on Defendants County of Tehama ("County"), Sheriff Dave Hencratt ("Hencratt"), Assistant Sheriff Phil Johnston ("Johnston"), and Sheriff Deputy Lester Squier ("Squier") (collectively, "County Defendants") Motion to Dismiss. (ECF No. 22.) Plaintiffs Francisco Gudino Cardenas and Marta Gudino Landaverde (collectively, "Plaintiffs") filed an opposition. (ECF No. 24.) County Defendants filed a reply. (ECF No. 26.)

For the reasons set forth below, the Court GRANTS in part and DENIES in part County Defendants' motion. (ECF No. 22)

///

///

///

///

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Court need not recount all background facts, as they are set forth fully in the Court's August 4, 2020 Order. (*See* ECF No. 18.) In short, this action arises from a mass shooting that occurred on November 14, 2017. (*Id.*) The shooter, Kevin Neal ("Neal") killed at least five people and wounded at least a dozen more. (*Id.*) Francisco Gudino Cardenas suffered injuries after being caught in crossfire between Neal and police officers. (*Id.*)

Plaintiffs filed the instant action on November 20, 2018. (ECF No. 1.) The Court granted County Defendants' motion to dismiss the Complaint on August 4, 2020. (ECF No. 18.) Plaintiffs filed the operative First Amended Complaint ("FAC") on September 3, 2020. (ECF No. 19.) Plaintiffs assert the following claims: (1) a 42 U.S.C. § 1983 ("§ 1983") claim for violation of due process under the Fourteenth Amendment; (2) a § 1983 claim for violation of equal protection under the Fourteenth Amendment; (3) a § 1983 claim for excessive force/unreasonable seizure in violation of the Fourth Amendment; (4) a § 1983 claim for conduct shocking to the conscience in violation of due process under the Fourteenth Amendment; (5) a § 1983 claim for deliberate indifference to medical needs in violation of due process under the Fourteenth Amendment; (6) a § 1983 claim for conspiracy to violate civil rights; (7) assault and battery; (8) intentional infliction of emotional distress; (9) negligence; (10) loss of consortium; (11) trespass to chattels and/or conversion; and (12) failure to perform mandatory duties in violation of California Government Code § 815.6. (*See generally id.*)

County Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on October 22, 2020. (ECF No. 22.)

### II. STANDARD OF LAW

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*

2

*v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, '[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more

than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III.     ANALYSIS**

County Defendants move to dismiss all of Plaintiffs' claims.  (ECF No. 22-1 at 8.)  The Court will address Plaintiffs' federal claims and state claims in turn.

        A.     <u>Federal Claims</u>

              *i.     Claim One: Due Process*

Plaintiffs bring a due process claim against County Defendants under the state created danger theory.  (ECF No. 19 at 28.)  In order to prevail under a state created danger theory, a

4

plaintiff must show (1) there was "affirmative conduct on the part of the state in placing the plaintiff in danger" and (2) the state acted with "deliberate indifference" to a "known or obvious danger." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (citing *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000); *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996)). The Court further notes that should Plaintiffs be able to establish a constitutional violation under this theory, the County can only be held liable if there is a municipal policy or practice which was the driving force behind the deprivation, or, on the part of Hencratt and Johnston, if they had a personal involvement in the deprivation or if their wrongful acts were sufficiently causally related to the deprivation. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691 (1978); *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989).

In its previous order, the Court concluded Plaintiffs' allegations that officers ignored credible complaints about Neal were not "affirmative act[s] that placed the victims in a more dangerous position." (ECF No. 18 at 9–10.) Because Plaintiffs failed to allege officers took any affirmative action, the Court declined to address deliberate indifference. (*Id.* at 11.)

In the instant motion, County Defendants again argue Plaintiffs fail to allege affirmative action. (ECF No. 22-1 at 14.) In opposition, Plaintiffs highlight the following allegations in the FAC: (1) when responding to a complaint about Neal's shooting in 2016, officers told Neal he could discharge firearms as long as he did so "in a safe manner" when they knew he had not been doing so and that the discharge of firearms was prohibited in the community; (2) after a criminal protective order against Neal became effective in early 2017, officers improperly left it up to Neal to voluntarily turn in his firearms, which communicated to Neal that County Defendants did not care if he continued to own and discharge firearms; (3) County Defendants communicated to Neal they did not enforce protective order violations or take illegal possession of firearms seriously when they refused to respond to Neal's complaints in July 2017 about other individuals brandishing firearms and violating restraining orders; and (4) Neal knew that County Defendants failed to adequately respond to complaints about Neal possessing and shooting firearms on his property toward his neighbor's homes. (ECF No. 24 at 15.) To support the proposition that these allegations amount to affirmative action, Plaintiffs rely primarily on three Second Circuit cases:

5

*Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005), *Dwares v. City of N.Y.*, 985 F.2d 94 (2d Cir. 1993), and *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415 (2d Cir. 2009). (*Id.* at 13–15.) Even if this Court were to apply the foregoing Second Circuit authority, however, these cases are easily distinguishable.

In *Dwares*, police officers allegedly told skinheads in advance of a political rally that they would not interfere with assaults or arrest those responsible for them. 985 F.2d at 99. The *Dwares* court stated "[s]uch a prearranged official sanction of privately inflicted injury would surely have violated the victim's rights under the Due Process Clause." *Id.* In contrast, Plaintiffs do not allege any officers *explicitly* told Neal it was acceptable to harm others or that he would not be arrested if he did so. Plaintiffs argue officers "directly communicated" their approval by: (1) telling Neal in 2016 there "was nothing they could do" so as long as he was shooting his firearms "in a safe manner" despite knowing Neal was not shooting in a safe manner and had recently assaulted someone; (2) allowing Neal to voluntarily turn in firearms after the criminal protective order was issued and failing to follow up with a subsequent report from Neal's wife that her firearm was missing; (3) refusing to respond to Neal's reports of another individual brandishing a weapon; and (4) ignoring or failing to respond adequately to numerous reports regarding Neal's dangerous activities. (ECF No. 24 at 15.) None of these communications with Neal come close to the "prearranged official sanction" of violence that occurred in *Dwares*. As to Plaintiffs' allegations about the officers' inaction, even the *Dwares* court recognized "an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause." 985 F.2d at 99.

In *Pena*, an off-duty officer killed a number of people while driving intoxicated. 432 F.3d at 102. The plaintiff alleged supervisory personnel encouraged the off-duty officer to drink in excess and drive under the influence by routinely drinking with him in the precinct parking lot, drinking and riding with him on the date of the incident, and otherwise communicating their approval by condoning the misconduct. *Id.* at 110–11. The court found such allegations amounted to a state created danger claim because state officials implicitly communicated to the off-duty officer that he would not be "arrested, punished, or otherwise interfered with while

6

engaging in misconduct that [was] likely to endanger the life, liberty, or property of others." *Id.* at 111–12. Importantly, "the Ninth Circuit has not adopted the *Pena* [c]ourt's holding that the affirmative conduct element of the state-created danger doctrine may occur 'implicitly.'" *Jamison v. Storm*, 426 F. Supp. 2d 1144, 1156 (W.D. Wash. 2006). Even if this Court found *Pena* to be persuasive, the facts are much different here. In *Pena*, officers and supervisors routinely drank at work with the off-duty officer and knew he was driving while drunk. 432 F.3d at 110–11. Here, there are no allegations that County Defendants or any other officers participated in or encouraged Neal's violence. There are no allegations to suggest that officers implicitly communicated to Neal that he would "not be arrested, punished, or otherwise interfered with" if he harmed others. *Id.* at 111. To the contrary, Plaintiffs allege Neal was arrested for threatening individuals and firing a gun over their heads in January 2017, which resulted in the issuance of the criminal protective order and a civil restraining order. (ECF No. 19 at 12.) At most, Plaintiffs assert "a failure to prevent misbehavior and to reprimand or punish" Neal for complaints about owning and shooting firearms on his property after January 2017, which is insufficient to state a due process claim. 432 F.3d at 112.

In *Okin*, the court found there was "a genuine issue of material fact as to whether [officers] implicitly but affirmatively encouraged [the assailant's] domestic violence." 577 F.3d at 430. The court cited an occasion when officers discussed football with the assailant during their response to the victim's complaint that he had beaten and tried to choke her. *Id.* The court also emphasized there were numerous occasions when the officers responded to the victim's complaints without filing a domestic incident report, interviewing the assailant, or making an arrest, even after the assailant told the officers he could not "help it sometime when he smack[ed] . . . [the victim] around." *Id.* The court stated the evidence showed "an escalating series of incidents" where the officers "openly expressed camaraderie with [the assailant] and contempt for [the victim]," which could be viewed as ratcheting up the threat of danger to the victim. *Id.* Unlike *Okin*, there are no allegations here that officers ever expressed camaraderie with Neal or contempt for potential victims.

///

The only Ninth Circuit case Plaintiffs cite on this issue is *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006). (ECF No. 24 at 13.) In *Kennedy*, Kimberly Kennedy contacted a police department to report that a neighbor molested her young daughter. *Id.* at 1057. Kennedy warned the officer that the neighbor had "violent tendencies." *Id.* The officer "assured Kennedy she would be given notice prior to any police contact with the [neighbor's family] about her allegations." *Id.* at 1058. Despite this promise, the officer drove to the neighbor's residence and informed the neighbor's family of the allegations prior to warning Kennedy. *Id.* Later that evening, the suspect broke into Kennedy's house and shot Kennedy and her husband, killing the husband. *Id.* The Ninth Circuit found that, by notifying the neighbor's family of the allegations "before the Kennedys had the opportunity to protect themselves from this violent response to the news," the officer "affirmatively created an *actual, particularized* danger Kennedy would not otherwise have faced." *Id.* at 1063 (emphasis added).

Unlike *Kennedy,* Plaintiffs' allegations do not lend even a reasonable inference that officers "affirmatively created an actual, particularized" danger to Plaintiffs. Consistent with *Kennedy*, other Ninth Circuit courts have permitted claims to proceed under the state created danger theory only where the state actor played a significant role in creating the dangerous situation. *See Munger*, 227 F.3d at 1082 (holding police officers could be held liable for the death of a visibly drunk patron from hypothermia they had ejected from a bar on an extremely cold night); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (holding as viable a state created danger claim against police officers who, after finding a man in grave need of medical care, cancelled a request for paramedics and locked him inside his house); *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992) (holding state employees could be liable for the rape of a registered nurse assigned to work alone with a known, violent sex-offender); *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (holding state could be liable for the rape of a woman that an officer had left stranded in a known high-crime area late at night). Here, the officers' alleged conduct falls far short of this standard. Although the officers may have been able to prevent the injuries, that does not mean they created an "actual, particularized" danger that did not otherwise exist. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 203 (1989) ("The most that

8

can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them."). As stated in this Court's previous order, Plaintiffs' allegations make clear that "Neal was, and would have remained, a dangerous individual prone to violent behavior" regardless of the officers' conduct.[1] (ECF No. 18 at 10.)

For all these reasons, Plaintiffs fail to allege affirmative action by County Defendants or any particular officer that created the danger posed by Neal. As such, Plaintiffs fail to assert a viable due process claim under the state created danger theory. In its prior order, the Court informed Plaintiffs what was necessary to state a plausible due process claim. Plaintiffs failed to do so and instead relied on many of the same allegations and arguments the Court previously rejected. Plaintiffs fail to persuade the Court that they can allege additional facts that would cure the deficiencies in this claim. Therefore, the Court GRANTS County Defendants' motion to dismiss Claim One and DISMISSES Plaintiffs' claim without leave to amend.[2]

## ii. Claim Two: Equal Protection

As a preliminary matter, Plaintiffs argue the Court should deny County Defendants' challenge to the equal protection claim because County Defendants did not challenge this claim in their original motion to dismiss. (ECF No. 24 at 17.) "If a failure-to-state-a-claim defense under

---

[1] Plaintiffs also argue County Defendants actively suppressed intervention by other agencies. (ECF No. 24 at 15.) As an example, Plaintiffs allege CalFire received a call in July 2017 from Neal alleging he could smell a "burning perfume" he thought was methamphetamine. (ECF No. 19 at 14.) Plaintiffs allege County Defendants recommended CalFire not investigate this incident because Neal "had reality issues and was also a firearms owner." (*Id.*) Plaintiffs allege this shows County Defendants instructed CalFire not to respond, but they fail to explain how this allegation is relevant to or contributed to the danger that occurred on November 14, 2017. (*Id.*)

[2] The Court also notes that to the extent Plaintiffs' claim is based on the actions of individual officers, those officers would likely be granted qualified immunity based on the lack of clearly established law on this issue. *See, e.g.*, *Decoria v. Cnty. of Jefferson*, 333 F. App'x 171, 173 (9th Cir. 2009) ("[W]e have never decided the question of whether a defendant officer violates a plaintiff's constitutional rights when, as in this case, the officer's challenged actions were not directed toward the plaintiff, but rather toward another person who later harmed the plaintiff.").

Rule 12(b)(6) was not asserted in the first motion to dismiss under Rule 12, Rule 12(h)(2) tells us that it can be raised, but only in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017). However, the Ninth Circuit has adopted a "very forgiving" approach and allows district courts to consider new arguments in successive motions to dismiss in the interest of judicial economy. *Id.* at 318–19. Because the issue has now been fully briefed, the Court will consider the merits of County Defendants' arguments.

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege: (1) the municipal defendants treated him differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the municipal defendants acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification. *Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1137 (E.D. Cal. 2004). The denial of police protection to disfavored persons stemming from discriminatory intent or motive violates the Equal Protection Clause. *Estate of Macias v. Ihde*, 219 F.3d 1018 (9th Cir. 2000). However, "in police failure-to-serve cases, the courts consistently have required more evidence of discriminatory intent than a simple failure of diligence, perception, or persistence in a single case. . . ." *Moua*, 324 F. Supp. 2d at 1140.

County Defendants argue Plaintiffs fail to allege discriminatory intent or motive. (ECF No. 22-1 at 17.) In opposition, Plaintiffs argue the following allegations in the FAC show discriminatory intent: (1) Defendants were biased and prejudiced against Rancho Tehama based on the perception that the community was impoverished, isolated, and a haven for "lowlifes, drug use, and general lawlessness"; (2) based on these biases and prejudices, Defendants withheld from the community ordinary and reasonable police response, protection, and enforcement services compared to other communities within their jurisdiction, particularly involving Neal; (3) Defendants' discriminatory purpose was to allow the community to experience and suffer the

dangerous and lawless effects of the community's own fault and making; and (4) Defendants' conduct had the discriminatory effect of exposing Plaintiffs to the danger posed by Neal. (ECF No. 24 at 17–19.)

Plaintiffs' somewhat attenuated claim seems to allege that officers violated their equal protection rights by failing to respond to complaints about Neal because the parties resided in the "impoverished," "lowlife," and "lawless" community of Rancho Tehama. (*See* ECF No. 19 at 34.) Plaintiffs fail to cite any case law where an individual raised a similar equal protection claim. Indeed, "the typical fact pattern in . . . cases [regarding alleged unequal protection of police services] involves domestic violence and repeated calls for police intervention by a female victim," which is not analogous to the instant case. *Moua*, 324 F. Supp. 2d at 1139–40. Moreover, Plaintiffs fail to cite any factual allegations suggesting that officers withheld police services in response to complaints about Neal because of any bias or perception about Rancho Tehama, or that officers would have acted differently under the circumstances if Neal resided in another community. The FAC includes numerous allegations suggesting police responded to complaints about Neal in a particular way because of Neal's specific characteristics. For example, Plaintiffs allege officers indicated Neal was "not law enforcement friendly," "would not come to the door," "had reality issues," and "was also a firearms owner." (ECF No. 19 at 29, 36.) While the FAC also alleges the officers dismissed complaints about Neal because the callers were deemed "not credible," there are no factual allegations to suggest officers based these credibility determinations on broad perceptions about Rancho Tehama. (*Id.* at 34.) Put simply, there are no factual allegations to lend even a reasonable inference that officers treated Rancho Tehama residents, including Plaintiffs, worse than residents of other communities, much less that officers did so based on any bias or perception about Rancho Tehama. It seems that Plaintiffs' claim relates to "a simple failure of diligence, perception, or persistence" in cases involving Neal specifically, not Rancho Tehama generally. *See Moua*, 324 F. Supp. 2d at 1140. Plaintiffs fail to explain how this is sufficient to state an equal protection claim. Accordingly, the first element for such a claim — different treatment from others similarly situated — is not met.

///

For these reasons, the Court GRANTS County Defendants' motion to dismiss Claim Two. Assuming Plaintiffs intend to bring a *Monell* claim against County Defendants, the Court also dismisses such a claim because there is no underlying constitutional violation. Although the Court is hard-pressed to imagine how Plaintiffs could cure the aforementioned deficiencies in the equal protection claim, the Court will allow Plaintiffs an opportunity to amend based on the liberal standard in favor of granting leave to amend. *See Lopez*, 203 F.3d at 1130.

### iii.   Claim Three: Excessive Force

Plaintiffs assert their § 1983 excessive force claim against Squier. (ECF No. 19 at 37.) Plaintiffs allege Squier shot Cardenas despite the fact that the police chief was shooting at Neal in a different car, there were reports of only one gunman, and Squier could see and hear Cardenas was pleading for help and not armed. (*Id.*) In moving to dismiss this claim, County Defendants argue Squier's actions were reasonable under the circumstances. (ECF No. 22-1 at 18–20.)

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment permits officers making an arrest to use force, but only an amount that is objectively reasonable in light of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "The intrusiveness of a seizure by means of deadly force is unmatched." *Garner*, 471 U.S. at 9. However, "whether or not [Squier's] actions constituted application of 'deadly force,' all that matters is whether [his] actions were reasonable." *Scott v. Harris*, 550 U.S. 372, 383 (2007). The inquiry is objective. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011). The vantage point is that of a reasonable officer confronted with the same facts, bearing in mind the decisions occurred in a "split" second and making every effort to ignore the advantages of "20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97.

Plaintiffs allegations state a plausible excessive force claim. *See Jensen v. City of Oxnard*, 145 F.3d 1078, 1083 (9th Cir. 1998) (concluding the allegation that an officer engaged in a Fourth Amendment seizure "by intentionally shooting at a figure he mistook to be an armed criminal" stated a viable excessive force claim). Whether Squier's use of force was reasonable is a fact question for the jury, not one to be decided on a motion to dismiss. *See A.G.1 by & through*

*Uribe v. City of Fresno*, No. 1:16-CV-01914-LJO-SAB, 2018 WL 4042906, at *4 (E.D. Cal. Aug. 22, 2018) (citing *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997)).

Accordingly, the Court DENIES County Defendants' motion to dismiss Claim Three.

> iv. *Claim Four: Due Process Claim for Conduct that Shocks the Conscience*

Plaintiffs also assert a due process claim against Squier for the same conduct at issue in the excessive force claim. (ECF No. 19 at 38.) In moving to dismiss, County Defendants argue facts related to the shooting do not shock the conscience. (ECF No. 22-1 at 20.)

To prevail on a substantive due process claim under the Fourteenth Amendment, Plaintiffs must show that an officer's conduct "shocks the conscience." *See Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "[A]n officer's 'deliberate indifference' may suffice to shock the conscience," *Wilkinson*, 610 F.3d at 554, and the plaintiff may prevail by showing that the officer "disregarded a known or obvious consequence of his action," *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).

The Court finds Plaintiff has alleged a plausible due process claim against Squier. *See Nicholson v. City of L.A.*, 935 F.3d 685, 693 (9th Cir. 2019) ("[A] rational finder of fact could find that [an officer's] use of deadly force shocks the conscience and was unconstitutional under the Fourteenth Amendment."). As with the reasonableness inquiry discussed above, the "deliberate-indifference inquiry should go to the jury." *Patel*, 648 F.3d at 974. The Court declines to make such a fact-sensitive determination on a motion to dismiss.

Therefore, the Court DENIES County Defendants' motion to dismiss Claim Four.

> v. *Claim Five: Due Process Claim for Deliberate Indifference to Medical Needs*

Plaintiffs assert a due process claim for deliberate indifference to medical needs against Squier and "Doe" defendants. (ECF No. 19 at 40.) Plaintiffs allege that after Squier shot Cardenas, Cardenas was completely immobile and dependent on others to move him and summon medical aid for him. (*Id.* at 41.) Plaintiffs allege Squier waited over five minutes to provide aid to Cardenas and then dragged Cardenas about 50 feet out from behind his car. (*Id.*) Plaintiffs

allege Squier did not call for an ambulance and County officials waited another 11 minutes before calling an ambulance.  (*Id.*)  Plaintiffs allege the delay worsened Cardenas's injuries and suffering.  (*Id.* at 41–42.)

County Defendants argue the Court should dismiss this claim because Neal created the danger, not the officers.  (ECF No. 22-1 at 21.)  The Court disagrees.  Not only do Plaintiffs allege Squier created the danger by shooting Cardenas without justification, but Plaintiffs also allege that Squier and other officers affirmatively increased the danger to Cardenas by waiting over 16 minutes before calling an ambulance.  This is sufficient to survive a motion to dismiss.  *See Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) (concluding there was evidence officers affirmatively increased the danger to a gunshot victim by preventing her ambulance from leaving the crime scene).

Therefore, the Court DENIES County Defendants' motion to dismiss Claim Five.

### vi.     *Claim Six: Conspiracy to Violate Civil Rights*

Plaintiffs assert a conspiracy to violate civil rights claim against all individual Defendants.  (ECF No. 19 at 43.)  County Defendants argue Plaintiffs are barred from bringing the new claim because they were not given leave to add new claims.  (ECF No. 22-1 at 22.)  In opposition, Plaintiffs argue they are restating their previous conspiracy claim under § 1983, not adding a new claim.  (ECF No. 24 at 22.)

To the extent Plaintiffs base their conspiracy claim on the constitutional violations alleged in Claims One and Two, the Court has dismissed those claims.  Moreover, as County Defendants correctly point out, this Court previously found Plaintiffs' allegations insufficient to show that Hencratt and Johnson personally participated in any alleged misconduct.  (ECF No. 18 at 15.)  Plaintiffs again only make the bare assertion that Defendants conspired with each other.  There are no additional facts which support this conclusion.  Because the Court has already given Plaintiffs the opportunity to amend this claim and Plaintiffs make no argument that the claim can be cured, the Court finds further amendment would be futile.

Accordingly, the Court GRANTS County Defendants' motion to dismiss Claim Six and DISMISSES that claim without leave to amend.

B.  State Claims

      i.  *Claim Seven: Assault and Battery*

As with the excessive force claim, County Defendants argue Plaintiffs cannot allege an assault and battery claim because Squier used reasonable force. (ECF No. 22-1 at 23–24.) County Defendants are correct that Plaintiffs' claim requires a showing of unreasonable force. *See Campos v. City of Merced*, 709 F. Supp. 2d 944, 963 (E.D. Cal. 2010) (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004) ("In order to prevail on a claim of battery against a police officer, the plaintiff bears the burden of proving the officer used unreasonable force.")). However, as discussed in the context of Plaintiffs' excessive force claim, whether Squier's use of force was reasonable is a fact question for the jury, not a question that should be decided on a motion to dismiss.

Therefore, the Court DENIES County Defendants' motion to dismiss Claim Seven.

      ii.  *Claim Eight: Intentional Infliction of Emotional Distress ("IIED")*

County Defendants argue Plaintiffs' IIED claim should be dismissed because they have failed to allege Squier's conduct was extreme and outrageous. (ECF No. 22-1 at 24.) More specifically, County Defendants argue Squier's conduct was "reasonable and justified." (*Id.*) As stated above, the Court declines to find as a matter of law that Squier's conduct was reasonable, which is ultimately a question for the factfinder. The Court agrees that the standard for proving "extreme and outrageous conduct" is difficult to meet. However, at the pleading stage, there is at the very least a reasonable inference that Squier's alleged conduct in shooting Cardenas when it was clear that he was innocent and unarmed was extreme and outrageous.

Accordingly, the Court DENIES County Defendants' motion to dismiss Claim Eight.

      iii.  *Claim Nine: Negligence*

County Defendants argue they are immune from Plaintiffs' negligence claims. (ECF No. 22-1 at 24.) County Defendants cite various statutes for this broad contention. (*Id.* at 24–25.) To the extent County Defendants argue they are immune from liability for Plaintiffs' negligence claim as a whole, such arguments would benefit from more thorough briefing. As it is, County Defendants cite scattershot provisions of the California Government Code and fail to coherently

argue why those provisions warrant dismissal of Plaintiffs' negligence claim in its entirety. It also bears mentioning that Plaintiffs assert a negligence claim against Squier for his decision to shoot Cardenas. (ECF No. 19 at 48.) It appears County Defendants do not challenge Plaintiffs' negligence claim as to Squier's actions.

For these reasons, the Court DENIES County Defendants' motion to dismiss Claim Nine.

### iv. Claim Ten: Loss of Consortium

County Defendants argue Plaintiffs' loss of consortium claim fails because it is derivative of their other claims. (ECF No. 22-1 at 26.) In opposition, Plaintiffs do not disagree that the loss of consortium claim is a derivative claim. (ECF No. 23 at 25.) Because the Court has found that some of Plaintiffs' claims survive County Defendants' motion to dismiss, the Court declines to dismiss the derivative loss of consortium claim at this time.

As such, the Court DENIES County Defendants' motion to dismiss Claim Ten.

### v. Claim Eleven: Trespass to Chattels and/or Conversion

County Defendants argue Plaintiffs fail to allege a conversion claim because "[i]mpounding a vehicle does not amount to conversion." (ECF No. 22-1 at 26.) In opposition, Plaintiffs argue the claim of conversion is based on allegations that County Defendants ransacked Plaintiffs' car, "further damaging it on top of the damage from the shootout, thereby effectively totaling it economically" and that "Defendants' employees always refused to reasonably permit or enable Plaintiffs to retrieve their car." (ECF No. 24 at 25–26.)

Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *Thrifty–Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1566 (1996). "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Welco Electronics, Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014) (internal quotation marks omitted).

County Defendants fail to persuade the Court that Plaintiffs fail to state a claim for conversion and/or trespass of chattels. County Defendants summarily argue they are immune

16

from liability for the tort of trespass under California Government Code §§ 820.2 and 815. (ECF No. 22-1 at 26.) However, they fail to develop the argument further or cite any case law with remotely similar facts. As with County Defendants' arguments regarding immunity for Plaintiffs' negligence claim, this matter would benefit from more thorough, precise briefing in the future. Based on the limited arguments before the Court, the Court concludes Plaintiffs' allegations that County Defendant's employees totaled Plaintiffs car during the shootout and refused to permit Plaintiffs to retrieve the car thereafter are sufficient to state a claim.

Therefore, the Court DENIES County Defendants' motion to dismiss Claim Eleven.

### vi.   *Claim Twelve: Failure to Perform Mandatory Duties*

Finally, County Defendants move to dismiss Plaintiffs' claim for violation of mandatory duties.[3] (ECF No. 22-1 at 26–27.) In opposition, Plaintiff cites this Court's prior order in related cases finding this to be a viable claim in these factual circumstances. (ECF No. 24 at 26–27.)

"Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." Cal. Gov't Code § 815.6. Plaintiffs allege Defendants are liable under this section because they failed to arrest Neal for reported violations of the restraining order.

California courts have set out a three-prong test to determine if tort liability may attach under § 815.6 for the failure of a public entity to discharge its duty: (1) the enactment in question must impose a mandatory, not discretionary, duty; (2) the enactment must be intended to protect against the kind of risk of injury suffered by the party asserting the statute as the basis of liability; and (3) the breach must be the proximate cause of the plaintiff's injury. *California v. Superior Court*, 150 Cal. App. 3d 848, 853-54 (1984) (citations omitted); Cal. Gov't Code § 815.6.

///

---

[3] To the extent County Defendants argue Plaintiffs are impermissibly adding a new claim (ECF No. 22-1 at 27), the Court notes that this claim falls within the scope of Plaintiffs' previous tort claims. Further, leave to amend is granted liberally, and the Court declines to dismiss Claim Twelve solely on this basis.

17

As in the related cases, the Court finds § 836(c)(1) creates a mandatory duty — albeit one conditioned on an objective finding of probable cause — for which Defendants may be liable under § 815.6.  Whether Defendants violated this duty is a question for the factfinder.  Further, Plaintiffs have pleaded sufficient facts to allege probable cause that Neal had firearms in violation of the restraining order including: the neighbors' various reports of Neal shooting; visible ammunition on Neal's property; and Neal's alleged statement to an officer that he had been shooting but in a safe manner.

Accordingly, Defendants' motion to dismiss Claim Twelve is DENIED.

### IV.     CONCLUSION

For the foregoing reasons, the Court GRANTS in part County Defendants' Motion to Dismiss (ECF No. 22) as follows:

1. Claim One is DISMISSED without leave to amend;
2. Claim Two is DISMISSED with leave to amend; and
3. Claim Six is DISMISSED without leave to amend

County Defendants' motion is DENIED with respect to the remaining claims.  Plaintiffs may file an amended complaint consistent with this Court's ruling not later than thirty (30) days from the electronic filing date of this Order.  Defendants shall file a responsive pleading not later than twenty-one (21) days thereafter.

IT IS SO ORDERED.

DATED:  September 2, 2021

Troy L. Nunley
United States District Judge